UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

THOMAS GIBB,                    :        18-CV-6888 (LAP)
                               :
                Plaintiff,      :
                               :        Memorandum and Order
        v.                     :
                               :
TAPESTRY, INC.                 :
d/b/a Stuart Weitzman,         :
                               :
                Defendant.      :

------------------------------x

Loretta A. Preska, Senior United States District Judge:

Plaintiff Thomas Gibb ("Gibb" or "Plaintiff") brings this action for discrimination, harassment, and retaliation claims against Defendant Tapestry, Inc. d/b/a Stuart Weitzman ("Tapestry" or "Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), New York State Human Rights Law (the "NYSHRL"), and New York City Human Rights Law (the "NYCHRL").  Defendant moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Motion to Dismiss ("Mot. to Dismiss"), dated Sept. 7, 2018 [dkt. no. 9].)  For the reasons set forth below, Defendant's motion is GRANTED without prejudice.

I.  Background

Tapestry is a fashion company that owns the designer brands Stuart Weitzman, Kate Spade, and Coach, Inc. ("Coach").  On

March 27, 2017, Gibb joined Coach as Vice President of Footwear Operations. (Complaint ("Compl."), dated July 31, 2018 [dkt. no. 1], 6.) After Coach changed its name to Tapestry, Gibb became a Tapestry employee while still working for the Coach brand. In early 2018, Gibb also began working on the Stuart Weitzman brand. (Id.) On March 1, 2018, Gibb joined Stuart Weitzman as the Vice President of Product Development Footwear. (Id. at 7.)

During his tenure working for Stuart Weitzman, Gibb alleges that the brand's Creative Director, Giovanni Morelli ("Morelli"), subjected Gibb to "a constant barrage of sexual harassment." (Id. at 8.) Morelli's "bombardment of offensive conduct" purportedly included coarse remarks about Gibb's genitals, unwanted physical touching, and derogatory comments about Gibb's sexual orientation. (Id. at 8-11.) This conduct reportedly occurred in a variety of private and public settings across multiple Stuart Weitzman offices. (Id. at 9-10.) Gibb complained on several occasions to Stuart Weitzman's Human Resources Department. (Id. at 8, 11.) In his words, each complaint was "ignored entirely." (Id. at 8.)

On May 15, 2018, Gibb contacted Tapestry through counsel and filed another complaint of sexual harassment with Stuart Weitzman's Human Resources Department. (Id. at 12.) Less than a week later, Tapestry announced that Morelli had resigned from

his position as Creative Director. Gibb believes Morelli's resignation was actually a "forced termination." (Id.) Two days after Morelli left Stuart Weitzman, Tapestry announced the resignation of a Human Resources employee who "had completely failed to take appropriate action in response to Mr. Gibb's multiple complaints about Mr. Morelli's sexually harassing conduct." (Id.) Gibb believes that this resignation was also a forced termination.

On May 29, 2018, Gibb brought an action against Tapestry and Morelli in the New York State Supreme Court for unlawful discrimination and sexual harassment claims under NYSHRL and NYCHRL. (Id. at 2, 13.) On June 4, 2018, Gibb filed a Charge of Discrimination (the "Original Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII based on the same claims of discrimination and harassment alleged in his state court complaint. (Id. at 4; see also Defendant's Brief ("Def. Brief"), dated Sept. 7, 2018 [dkt. no. 10], 3.)

On June 18, 2018, Tapestry terminated Gibb's employment and commenced a lawsuit against Gibb and a company he founded with his brother called Homegrown for Good, LLC d/b/a Tidal New York ("Tidal") for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unfair competition and unjust enrichment. (Def. Brief at 3.) Tapestry claims that a May 28,

2018 article in the New York Times revealed Gibb's "extensive ongoing involvement with Tidal" which was "beyond that of an investor." (Compl. at 2.) Tapestry alleges that this ongoing involvement with Tidal violated the "Conflicts of Interest" and "Confidentiality" provisions in Tapestry's Code of Conduct. (Id. at 14.)

Gibb asserts that Tapestry's action against him is "retaliatory and baseless." (Id. at 15.) Gibb contends that the New York Times articles merely identifies him as a co-founder of Tidal and that Tapestry has always been fully aware of Gibb's minority ownership interest and ongoing involvement in Tidal. (Id. at 14-15) Gibb also points to Tapestry's failure to sue Morelli for breach of the company's Code of Conduct—which requires "compliance with the laws" and "prohibits discriminatory practices, including harassment"—as evidencing the retaliatory nature of the action against him. (Id. at 15-16.) Gibb claims that Tapestry's action is a vindictive effort to harm a former employee "who forced the Company to part ways with a Creative Director in whom it had made substantial investments." (Id. at 16.)

In light of Tapestry's perceived retaliation—firing Gibb and instituting the aforementioned lawsuit—Gibb filed an Amended Charge of Discrimination (the "Amended Charge") with the EEOC on July 23, 2018 to include an additional claim of unlawful

retaliation.  (Plaintiff's Brief ("Pl. Brief"), dated Sept. 21, 2018 [dkt. no. 17], 4; see also Declaration in Opposition to Motion to Dismiss ("Pl. Decl."), dated Sept. 21, 2018 [dkt. no. 18-4].)  On July 30, 2018, seven days after Gibb filed the Amended Charge and 56 days after the Original Charge was filed, the EEOC issued a right-to-sue letter to Gibb upon his request. (Def. Brief at 4.)  Per this letter, the EEOC was terminating its processing of Gibb's charges after finding it unlikely that it could complete its administrative processing within 180 days from the filing of these charges.

On July 31, 2018, Gibb filed a Complaint in this Court alleging discrimination, harassment, and retaliation claims under Title VII, as well as additional retaliation claims under NYSHRL and NYCHRL.  (Compl. at 16-19.)  That same day, Gibb filed a motion to discontinue his pending action in New York State Supreme Court to pursue discrimination and sexual harassment claims under NYSHRL and NYCHRL in this Court.  (Def. Brief at 4; see Compl. at 3, n.2).

On September 7, 2018, Tapestry filed the instant motion to dismiss Gibb's Complaint.  (Mot. to Dismiss at 1.)  Tapestry argues that Gibb's Title VII claims should be dismissed for failure to exhaust administrative remedies.  (Def. Brief at 4-11.)  Namely, Tapestry asserts that Gibb's right-to-sue letter is invalid because the EEOC failed to comply with its statutory

mandate by issuing this letter before 180 days had run from the initial filing of charges or, alternatively, because the EEOC failed to conduct a sufficient factual inquiry into Gibb's claims to legitimately certify that it could not complete an investigation within 180 days. (Id.) Additionally, Tapestry argues that, in the absence of viable federal claims, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. (Id. at 11-12.)

On September 13, 2018, Gibb re-filed a Supplemental Charge of Discrimination (the "Supplemental Charge") with the EEOC for the same discriminatory and retaliatory conduct identified in the Original Charge and the Amended Charge. (Pl. Brief at 5.) On September 14, 2018, the EEOC issued a notice dismissing the Supplemental Charge on the ground that Gibb had already brought an action in this Court. (Defendant's Reply Brief ("Def. Reply Brief"), dated Sept. 28, 2018 [dkt. no. 19], 3.) That same day, Gibb's state court claims for sexual harassment and discrimination under NYSHRL and NYCHRL were dismissed without prejudice "so the parties could proceed before this Court." (Pl. Brief at 4, n.4.) Gibb intends to amend the Complaint to include these additional claims. (Id.)

II.    Legal Standing

Upon a motion by a defendant, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a district court to dismiss a

complaint for "failure to state a claim upon which relief can be
granted." FED. R. CIV. P. 12(b)(6).  In considering such a
motion, a court must accept all non-conclusory factual
allegations as true and construe "all reasonable inferences in
the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56
(2d Cir. 2008) (citation and internal quotation marks omitted).
In accordance with the Supreme Court's decision Bell Atlantic
Corp. v. Twombly, 550 U.S. 544 (2007), this Court applies a
"plausibility standard," which is guided by "[t]wo working
principles." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).
First, although "a court must accept as true all of the
allegations contained in a complaint," that "tenet" "is
inapplicable to legal conclusions," and "[t]hreadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." Id. at 678.  "Second,
only a complaint that states a plausible claim for relief
survives a motion to dismiss," and "[d]etermining whether a
complaint states a plausible claim for relief will . . . be a
context-specific task that requires the reviewing court to draw
on its judicial experience and common sense." Id. at
679; Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).

    In ruling on a 12(b)(6) motion, a court may consider any
documents that are attached to the complaint or incorporated in
it by reference. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.

2007). Additionally, a court may also consider "a document upon which [the complaint] solely relies and which is integral to the complaint" in ruling on such a motion. Id. (internal quotation marks and citation omitted). On October 29, 2018, this Court received a letter from Plaintiff providing new developments about his claims. (Plaintiff's Letter, dated Oct. 29, 2018 [dkt. no. 20].) Given that Plaintiff's Letter was filed nearly three months after the Complaint and details developments far outside the four corners of the Complaint, this Court does not consider the new material detailed in the Letter, nor Defendant's response, for the purposes of the discussion below. (See Defendant's Letter, dated Oct. 31, 2018 [dkt. no. 21].)

III.   Discussion

Defendant argues that Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies because: (1) Plaintiff's charges were not pending before the EEOC for at least 180 days, as required by Title VII; (2) the EEOC's regulation permitting the issuance of right-to-sue letters within the 180-day window is invalid and does not provide a basis for exhaustion of administrative remedies; and, alternatively, (3) even if the EEOC has the authority to issue early right-to-sue letters, the July 30, 2018 right-to-sue letter is defective because the EEOC failed to properly investigate the merits of Gibb's claims. Defendant also argues

that, in the absence of valid federal claims, this Court should decline to exercise supplemental jurisdiction over the remaining state and city law claims. (Def. Brief at 4-12.)

In response, Plaintiff puts forth that: (1) the EEOC's July 30, 2018 right-to-sue letter complied with the EEOC's regulations and is valid as a matter of law; (2) Defendant's motion to dismiss is moot in light of the EEOC's dismissal of Plaintiff's claims on September 14, 2018; (3) Defendant is estopped from asserting that this action should be dismissed; and (4) this Court should retain supplemental jurisdiction over the Plaintiff's state and city law claims to serve judicial economy and promote an expeditious resolution. (Pl. Brief at 5-14.) This Court takes each of the parties' positions in turn.

A. Title VII Claims

It is firmly established that "exhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000). Title VII provides in pertinent part:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party,

> the Commission . . . shall so notify the person
> aggrieved and within ninety days after giving such
> notice a civil action may be brought . . . .

42 U.S.C. § 2000e-5(f)(1) (2012).  Section 2000e-5(f)(1) plainly provides that, after a charge has been filed, the EEOC has 180 days to dismiss the charge or file a civil action.  Only after 180 days have elapsed may the charging party pursue his or her claims in court.  However, the EEOC has authorized itself to issue "early" right-to-sue letters when a complainant requests a right-to-sue letter prior to the running of 180 days provided that: (1) the respondent is a non-governmental entity; and (2) a designated official from the EEOC "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect."  29 C.F.R. § 1601.28(a)(2) (2004).

Courts are divided on whether the EEOC may issue a valid right-to-sue letter within the 180-day waiting period contemplated by section 2000e-5(f)(1).  The Ninth Circuit and Eleventh Circuit have both held that the EEOC's issuance of an early right-to-sue letter under 29 C.F.R. § 1601.28(a)(2) does not bar a Title VII suit.  Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1061-63 (11th Cir. 1994); Saulsbury v. Wismer & Becker, Inc., 644 F.2d 1251, 1257 (9th Cir. 1980).  The D.C. Circuit has reached the opposite result, concluding that "Title

VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court" and that the EEOC's self-authorization to issue early right-to-sue letters "undermines its express statutory duty to investigate every charge filed, as well as Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." Martini v. Fed. Nat. Mortg. Ass'n, 178 F.3d 1336, 1347 (D.C. Cir. 1999), cert. dismissed, 120 S. Ct. 1155 (2000). The Third Circuit has also frowned on the issuance of early right-to-sue letters, albeit in dicta. Moteles v. Univ. of Pa., 730 F.2d 913, 917 (3d Cir. 1984) ("[P]remature resort to the district court [for Title VII claims] should be discouraged as contrary to congressional intent.").

In Weise v. Syracuse University, the Court of Appeals upheld the validity of an early right-to-sue letter under circumstances dissimilar to the instant case. 522 F.2d 397, 412 (2d Cir. 1975). Weise is not helpful to Plaintiff for the following reasons: (1) it was decided before the promulgation of 29 C.F.R. § 1601.28(a)(2); (2) "there was a prior charge against the same employer that had been pending for more than the required [180 days];" and (3) its holding was explicitly limited to "the circumstances of this case." Id. at 412 (noting that, as a general maxim, "absent the dismissal of a charge by the EEOC, the [right-to-sue letter] should not issue until the

11

charge has been before the Commission for at least 180 days").
The Court of Appeals has not had an opportunity to offer a
definitive position relevant to the instant action but has noted
in dicta that "the issue [posed by early right-to-sue letters]
is not jurisdictional in nature." Arroyo v. WestLB Admin.,
Inc., 213 F.3d 625 (2d Cir. 2000); see also Hankins v. Lyght,
441 F.3d 96, 101 (2d Cir. 2006).

District courts within this Circuit are split on the
permissibility of the EEOC's issuance of early right-to-sue
letters. Compare Commodari v. Long Island Univ., 89 F.Supp.2d
353, 381-83 (E.D.N.Y. 2000) (holding that the issuance of an
early right-to-sue letter does not bar a Title VII
suit); Palumbo v. Lufthansa German Airlines, No. 98 Civ. 5005,
1999 WL 540446, at *2 (S.D.N.Y. July 26, 1999) (same); Figueira
v. Black Entertainment Television, 944 F. Supp. 299, 303-08
(S.D.N.Y. 1996) (same), with Stetz v. Reeher Enters., Inc., 70
F.Supp.2d 119, 120-25 (N.D.N.Y.1999) (holding that an early
right-to-sue letter is invalid); Rodriguez v. Connection Tech.,
Inc., 65 F.Supp.2d 107, 110 (E.D.N.Y. 1999) (same); Henschke v.
New York Hosp.-Cornell Med. Ctr., 821 F. Supp. 166, 169-71
(S.D.N.Y. 1993) (same); True v. New York State Dep't of
Correctional Serv., 613 F. Supp. 27, 29-30 (W.D.N.Y.
1984) (same).

However, the instant action does not require this Court to tread on new ground. As this Court decided in Henschke, the EEOC's issuance of an early right-to-sue letter presents "a jurisdictional deficiency requiring suspension and a remand of plaintiff's Title VII claims to the EEOC." Henschke, 821 F. Supp. at 170 (citation and internal quotation marks omitted). As described below, this Court finds no reason to disturb its earlier holding.

In "review[ing] an agency's construction of the statute which it administers," a court must answer two questions: (1) "whether Congress has directly spoken to the precise question at issue"; and (2) if "Congress has not directly addressed the precise question at issue," whether the agency's policy is "based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). "If the intent of Congress is clear, that is the end of the matter"—the court and the agency "must give effect to the unambiguously expressed intent of Congress." Id. When interpreting a statute, courts must scrutinize the language of the statute, its legislative history and congressional purpose, and the role of a given section in relation to the entire act. U.S. v. Thompson/Center Arms Co., 504 U.S. 505, 511-16 (1992). Additionally, this Court remains mindful of the Supreme Court's imperative to "reject any suggestion that the EEOC may adopt

13

regulations that are inconsistent with the statutory mandate."
Mohasco Corp. v. Silver, 447 U.S. 807, 823-25 (1980).

Congress has unequivocally addressed the exclusive conditions under which Title VII complainants may bring a private suit in federal court. As this Court previously held in Henschke, "the language of section 2000e-5(f)(1) explicitly requires that one of two events occur before the issuance of a right-to-sue letter; either (i) the EEOC must dismiss the complaint; or (ii) 180 days must have run from the filing of the charges with the EEOC during which time the EEOC has taken no action." Henschke, 821 F. Supp. at 170. Because "Congress has directly spoken to the precise question at issue," Chevron, U.S.A., Inc., 467 U.S. at 84, that is the end of the inquiry, and the early right-to-sue letter is invalid.[1]

---

[1] Although not necessary to the result, the legislative history underlying Title VII provides ample support for this Court's understanding that section 2000e-5(f)(1) requires either dismissal or the passing of 180 days before a complainant may institute a private civil suit. Per the Section-by-Section Analysis accompanying the Equal Employment Opportunity Act of 1972—Conference Report:

> With respect to cases arising under this subsection, if the Commission: (a) has dismissed the charge, or (b) 180 days have elapsed from the filing of the charge without the Commission, or the Attorney General, as the case may be, having filed a complaint under section 706(f) [(as amended 42 U.S.C. § 2000e-5(f)(1))], or without the Commission having entered into a conciliation agreement to which the person aggrieved is a party (i.e. a signatory) the person
> (cont'd on next page)

Here, "the Original Charge was pending with the EEOC for a maximum of 56 days[,] and the Amended Charge for a maximum of 7 days" before the EEOC issued its July 30, 2018 right-to-sue letter. (Def. Brief at 7.) By issuing this right-to-sue letter before the requisite 180-day window had elapsed, the EEOC failed to comply with the explicit requirements of section 2000e-5(f)(1). Plaintiff urges that the EEOC's regulation authorizing early right-to-sue letters is not "in direct conflict" with Title VII's exhaustion requirement. (Pl. Brief at 9-10.) In light of the plain language of section 2000e-5(f)(1), this Court disagrees. Congress clearly expressed its will that a private Title VII suit can only follow after charges have been pending before the EEOC for at least 180 days. The EEOC cannot, by its own hand, abrogate its congressional mandate. As such, the July 30, 2018 right-to-sue letter is fatally defective and does not

_____

(cont'd from previous page)
aggrieved may bring an action in an appropriate district court within 90 days after receiving notification.
118 CONG. REC. 7166, 7168 (1972). This analysis elucidates a congressional understanding that "occurrence of one of these two events is a necessary-not merely a sufficient-condition for commencement of private civil actions." Spencer v. Banco Real, S.A., 87 F.R.D. 739, 743 (S.D.N.Y. 1980); see also Martini, 178 F.3d at 1346-48 (D.C. Cir. 1999) (citing changes across earlier versions of the bill, floor debates, and statements from two major sponsors before concluding that early right-to-sue letters "defeat[] the explicit congressional policy favoring EEOC-facilitated resolution up to the 180th day").

provide Gibb with the necessary means to initiate a private civil suit.

In reaching this decision, the Court is not addressing the merits of Defendant's argument that the right-to-sue letter is invalid because "the EEOC did not conduct any factual inquiry that would allow it to legitimately certify that it could not complete its investigation within 180 days" and thereby failed to abide by its own regulation. (Def. Brief at 10.) The Court sees no reason to address this position given the right-to-sue letter was issued in contravention of section 2000e-5(f)(1). However, the Court notes that there is a growing body of decisions amongst our sister courts finding right-to-sue letters invalid where "no meaningful investigation of plaintiffs' claims was conducted, and no serious attempt to resolve the dispute was undertaken prior to initiating an action in federal court" under circumstances similar to the instant action. Stetz, 70 F. Supp. 2d at 124 (finding a right-to-sue letter issued 21 days after filing of charges was invalid); see also Stafford, 100 F. Supp. 2d 137, 137 (N.D.N.Y. 2000) (notice issued 16 days after filing of charge was invalid); Deas, 98 F. Supp. 2d at 465 (right-to-sue letter issued seven days after filing of charges was invalid); Rodriguez, 65 F. Supp. 2d at 112 (right-to-sue letter issued 39 days after filing of charges was invalid).

Plaintiff argues that the EEOC's September 14, 2018 dismissal of Gibb's Supplemental Charge provides an independent basis for exhaustion and renders Defendant's motion to dismiss moot. (Pl. Brief at 5-6.) The EEOC's sole reason for this dismissal was that Gibb had already commenced a federal action. (Pl. Decl., [dkt. no. 18-8], 2.) This Court again looks to section 2000e-5(f)(1), which, in turn, provides that section 2000e-5(b) governs the conditions under which the EEOC may issue a dismissal. Per section 2000e-5(b), "[i]f the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action." A valid dismissal is predicated on an investigation of the underlying merits of the charge. See Mach Mining, LLC v. E.E.O.C., 135 S. Ct. 1645, 1649 (2015) ("If the Commission finds no "reasonable cause" to think that the allegation has merit, it dismisses the charge and notifies the parties.")

The EEOC's September 14, 2018 dismissal was not predicated on an assessment of "reasonable cause" but rather the fact that the Plaintiff had already filed charges in federal court. As such, this dismissal does not provide an independent basis for exhaustion. Permitting such would enable complainants to circumvent the administrative process contemplated by Title VII:

complainants could simply file a federal lawsuit before

instituting charges with the EEOC and then proceed to satisfy

the Title VII exhaustion requirement merely by notifying the

EEOC of the then-pending federal lawsuit, thereby sidestepping

the possibility of any meaningful conciliation process during

the 180-day window. See id. at 1651 ("Title VII . . . imposes a

duty on the EEOC to attempt conciliation of a discrimination

charge prior to filing a lawsuit.")  The 180-day window provides

a critical opportunity for the aggrieved parties to conciliate

and is an integral component of the Title VII scheme. Spencer,

87 F.R.D. at 743.  Enabling complainants to bypass this

opportunity for amicable dispute resolution is an outcome that

is inimical to the statutory language.  Accordingly, the EEOC's

September 14, 2018 dismissal does not moot Defendant's motion to

dismiss.  Additionally, the Court denies Plaintiff's informal

request seeking voluntary withdrawal of his claims without

prejudice in order to recommence an action based on the EEOC's

September 14, 2018 dismissal.  (See Pl. Brief at 7.)

This Court finds it prudent to note that it is not

addressing Plaintiff's argument that requiring Plaintiff to wait

180 days will merely result in a standstill that contradicts the

intent of Title VII.  (See id. at 10.)  As this Court again

notes, "[u]nfortunately, it may be that reaching a conciliation

agreement in the present instance is impossible and that in some

180 days the Court and the parties will find themselves in the exact same position they find themselves in today." Henschke, 821 F. Supp. at, 171. However, as detailed above, Congress has unambiguously expressed its preference for conciliatory dispute resolution in EEOC proceedings. Neither the EEOC nor this Court can overstep the congressional mandate expressed in section 2000e-5(f)(1) and, as such, the 180-day window must stand as Congress intended.

B. Judicial Estoppel

Plaintiff advances that "Tapestry should be estopped from asserting that this action is improperly before this Court as Tapestry consented to dismissal of the [state and city law claims] so that all of Plaintiff's claims of discrimination and retaliation could proceed in federal court." Generally, "[t]he doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004) (emphasis added). As such, "[a] party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." Id. (internal quotation marks and citation omitted).

19

Plaintiff's judicial estoppel theory is without merit. Defendant's motion to dismiss is based on Plaintiff's failure to exhaust his administrative remedies for his Title VII claims. None of the claims alleged in the state court action requires exhaustion of administrative remedies through the EEOC. Defendant cannot be estopped on grounds which were not argued in the prior action. Additionally, Defendant did not successfully advance a position in the state court action. By Plaintiff's own contention, it was <u>Gibb</u> who "requested that the [state court claims for unlawful discrimination and harassment] be discontinued so that each of his claims could proceed as a single action in this Court." Pl. Brief at 11. If any party successfully advanced a position in the state court action, it was Gibb. Absent both of the necessary elements, this Court finds that Plaintiff's judicial estoppel theory does not provide any basis to bar Defendant's motion to dismiss.

C.  Supplemental Jurisdiction

A district court with original jurisdiction in a civil action has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2012). However, a district court may "decline to exercise supplemental jurisdiction over a claim" if it "has

dismissed all claims over which it has original jurisdiction."
28 U.S.C. § 1367(c). In determining whether to exercise
supplemental jurisdiction over state-law claims, a district
court should consider "the values of judicial economy,
convenience, fairness, and comity." Carnegie-Mellon Univ. v.
Cohill, 484 U.S. 343, 350 (1988). Generally, "if a plaintiff's
federal claims are dismissed before trial, the state law claims
should be dismissed as well." Oneida Indian Nation of N.Y. v.
Madison Cty., 665 F.3d 408, 437 (2d Cir. 2011) (internal
quotation and citation omitted); see also Burchette v.
Abercrombie & Fitch Stores, Inc., No. 08 CIV. 8786, 2010 WL
1948322, at *12 (S.D.N.Y. May 10, 2010) ("The Court declines to
exercise supplemental jurisdiction over Plaintiff's claims under
the NYCHRL in light of the dismissal of Plaintiff s Federal
causes of action.")

Plaintiff does not present any viable federal claims due to
his failure to exhaust his administrative remedies before the
EEOC. Additionally, Plaintiff's federal suit is in its infancy,
and there have been no proceedings before this Court other than
Defendant's motion to dismiss. As such, this Court sees no
reason to exercise supplemental jurisdiction over Plaintiff's
state and city law claims at this time.

IV.    Conclusion

For the reasons set forth above, Defendant's motion to dismiss, [dkt. no. 9], is granted without prejudice to the extent that Plaintiff's Title VII claims are suspended pending resubmission of Plaintiff's charge to the EEOC for a period sufficient that Plaintiff's charge will actually have been before the agency for the requisite 180-day period. Plaintiff's state and city law claims are also suspended pending resolution of Plaintiff's Title VII claims before the EEOC.

SO ORDERED.

Dated:    New York, New York
          November 30, 2018

_____
LORETTA A. PRESKA
Senior United States District Judge